[No. 37817.   En Banc.   June 29, 1967.]

VIOLA WARREN, *Appellant*, v. ARTHUR H. HART *et al.,*
*Respondents.*\*

*Reported in 429 P.2d 873.

*Mary E. Burrus* and *David F. Hiscock* (of *Kahin, Horswill, Keller, Rohrback, Waldo & Moren*), for appellant.

*Miracle, Treadwell & Pruzan,* for respondents.

DONWORTH, J.—This case arose out of a rear-end-automobile collision which occurred on an access road leading into Aurora Avenue from Phinney Avenue in Seattle on which both cars involved were traveling in the same direction.

Respondent wife (herein referred to as Mrs. Hart), driving a vehicle belonging to her sister, overtook the car driven by appellant (Mrs. Warren) and the collision occurred. As a result, Mrs. Warren sustained substantial injuries, and her car was badly damaged. She instituted this action for damages alleging that Mrs. Hart had been negligent in failing to observe traffic conditions on Aurora Avenue and in following her car too closely. Mrs. Hart answered by denying the alleged acts of negligence and counter-claiming for damages to her vehicle on the theory that Mrs. Warren had been negligent in failing to signal her intention to enter traffic on Aurora Avenue and in turning in front of the Hart vehicle without giving any warning or signal.

A trial was had before the court sitting with a jury. The testimony of the two parties concerning the events immediately preceding the accident were in direct conflict. No disinterested eyewitness was produced by either party. The jury returned a verdict for respondent wife but allowed her no damages with respect to her vehicle. From a judgment of dismissal entered on the verdict after the denial of her motion for a new trial, Mrs. Warren has appealed.

In her brief, Mrs. Warren states her assignments of error as follows:

The trial court erred in permitting the introduction of evidence regarding citations not having been issued by the investigating officer.

This error was rendered irreparable by the misconduct of counsel as shown by his closing argument wherein he declared that a "little baby court" had already decided this matter and that the jurors should be guided by that decision.

The trial court further erred in not granting a new trial to rectify the damage done by the combined effect of the first two errors.

■ Referring to the first assignment, we have previously stated that the fact of citation or noncitation of a driver by the investigating law enforcement officer is inadmissible. *Billington v. Schaal,* 42 Wn.2d 878, 882, 259 P.2d 634 (1953):

While an arrest or citation might be said to evidence the on-the-spot opinion of the traffic officer as to respondent's negligence, this would not render the testimony admissible. It is not proper to permit a witness to give his opinion on questions of fact requiring no expert knowledge, when the opinion involves the very matter to be determined by the jury, and the facts on which the witness founds his opinion are capable of being presented to the jury. *Johnson v. Caughren,* 55 Wash. 125, 104 Pac. 170; *Bruenn v. North Yakima School Dist.,* 101 Wash. 374, 172 Pac. 569. The question of whether respondent was negligent in driving in too close proximity to appellant's vehicle falls into this category. Therefore, the witness' opinion on such matter, whether it be offered from the witness stand or implied from the traffic citation which he issued, would not be acceptable as opinion evidence.

In relation to the foregoing, we also note that the respondent wife is not contending that the injection of the matter of the noncitation by the investigating officer was not a deliberate act. In fact, it would be difficult, if not impossible, for her to make such a claim. The following portion of the record patently demonstrates the intentional nature of the question proposed by her counsel:

Q. Now did the officer issue a citation to either one? A. No, he did not. Miss Burrus: If your Honor please, I do not think it is appropriate to ask that question and I will ask the answer to be stricken, and also that the witness not answer before the question has been completely asked. There wasn't an opportunity afforded me to make the objection. Mr. Miracle: Your Honor,— The Court: Objection overruled. The answer may stand. Proceed.

In *Miller v. Staton*, 64 Wn.2d 837, 840, 394 P.2d 799 (1964), we noted that the rule, that an intentional injection of collateral matter of a prejudicial nature will be reversible error,

[M]ust be administered with care, to the end of according reasonable latitude to the interpretation of statements made in the heat of trial and, subsequently, viewed only on a cold record, and with the aid of hindsight. *Nevertheless, the presence of this type of statement in the record will alone lead this court to an extremely careful evaluation of the total approach or presentation to the jury, in terms of the fairness of the trial.* (Italics ours.)

The above-quoted portion of the record might be sufficient to support appellant's contention that she is entitled to a new trial were it not for the fact that appellant's counsel was initially responsible for raising the subject of the presence of a law enforcement officer at the scene of the accident. In her opening statement to the jury, appellant's counsel stated, in part:

After the impact she drove on over to the curb right behind Allen Place, stopped, got out of the car and went back and said she would try to call the police, which she did from a motel a little further down the street.

Standing alone, this statement by appellant's counsel would not merit, or justify, amplification or edification by respondents' counsel as to the actions of the police officer upon his arrival. But appellant's counsel reopened this matter during direct examination of appellant. Appellant testified that she had called the police from a nearby "pay" telephone; that she had waited for the police to arrive, and that an officer had finally arrived at the scene of the accident, but she had not been told his name. Appellant then testified:

Q. After the officer was there, where did you next proceed to? A. After the officer was there? Q. Yes. A. *He told me I was free to leave the scene.* I returned to my home. (Italics ours.)

In considering the reference to the police in counsel's opening argument and in appellant's testimony, it is quite possible that the jury inferred: (1) that appellant had fewer qualms about who was at fault because she had been the one to contact the police, and/or (2) that the investigating police officer concluded that appellant was not at fault, since he had indicated that she was "free to leave the scene." Unfortunately, respondents' counsel subsequently chose deliberately to solicit an answer from his client with reference to the fact of noncitation by the investigating officer, rather than attempting immediate corrective action in the form of a motion to strike the answer and a request that the jury be instructed to disregard that particular portion of appellant's testimony. Appellant's counsel was initially responsible for injecting the police officer and his actions into the trial of this case. Respondents' counsel was entitled to counter or correct the unfavorable implications arising from appellant's presentation to the jury of statements and opinions collateral to the issues of the case. We have made similar rulings in other instances where counsel have invited inquiry into and speculation about improper matter. *Short v. Hoge,* 58 Wn.2d 50, 360 P.2d 565 (1961); *Bradshaw v. Seattle,* 43 Wn.2d 766, 264 P.2d 265, 42 A.L.R. 2d 800 (1953).

In the light of this state of the record, we think that appellant's first assignment is without merit.

Appellant next asserts that the aforementioned alleged error of the trial court in allowing respondent wife to testify that neither driver was given a traffic citation was compounded and made irreparably harmful by the reference of respondents' counsel to this portion of the testimony in the closing argument. The general tenor of counsel's remarks in this respect is readily identifiable from the following excerpts of his closing argument to the jury:

I would like to point out to begin with there are three

logical steps in discussing a case of this sort; first, responsibility, just common sense and third, damages. I am going to touch on those subjects in discussing this matter.

I would like to first with reference to responsibility point out to you this one thing: *that there was a little baby court held out at the scene of this collision, and this little baby court was held at the request of the plaintiff in this case when she called the police officers and they came in a car and they talked to both of the people.* They interviewed the parties right at the spot, the parties to this case. They looked at what happened there. The officers saw what had happened, talked with each and issued no traffic citation to either party.

*Now this baby court,* I submit to you, that we can use it for guidance, because they are our employed representatives. They are aware of the rules of the road and they are out to enforce them. They are out to give tickets, and they do, if there is any violation of the statutes the court has given you in these instructions.

This could save us an awful lot of time if we look at it in this· way, but if you don't want to look at it in this way and you want to look at five days of interrupted evidence, one way or the other, then let's look at it with a common sense view in this case. (Italics ours.)

No objection was forthcoming from opposing counsel after respondents' counsel had made reference to "the little baby court." He continued in this regard by again utilizing the analogy shortly before terminating his address to the jury:

We are here for exact justice under the just instructions of the court and I ask you, ladies and gentlemen, in all common sense, weigh the evidence, weigh the claim. Remember that we have a little trial court of people on the scene of this collision at one time, people who are experts and who decided they should give no citation in this case to either party.

Respondent wife argues that, since appellant did not make objection to her counsel's conduct at the time it occurred or ask the trial court to declare a mistrial or instruct the jury to disregard counsel's statement, she has waived her right to claim that it constituted reversible error which entitled her to a new trial. In support of this argument, respondent

wife cites *Nelson v. Martinson,* 52 Wn.2d 684, 328 P.2d 703 (1958), which supports her contention as to the general rule applicable to such a situation.

However, there is a well recognized exception to that rule where the misconduct is so flagrant and prejudicial that no instruction to disregard it would have cured it.

■ In *Strandberg v. Northern Pac. Ry.,* 59 Wn.2d 259, 264, 367 P.2d 137 (1961), we referred to this exception as follows:

> The rule is that a new trial should not be granted because of misconduct of counsel, unless there has been a request to the trial judge to give the jury a corrective instruction, except where the misconduct was so flagrant that no instruction would cure it. *Seattle v. Harclaon,* 56 Wn. (2d) 596, 354 P. (2d) 928; *McUne v. Fuqua,* 42 Wn. (2d) 65, 253 P. (2d) 632; *State v. Leuch,* 198 Wash. 331, 88 P. (2d) 440.

See, also, *State v. Suleski,* 67 Wn.2d 45, 406 P.2d 613 (1965); *Riley v. Department of Labor & Indus.,* 51 Wn.2d 438, 319 P.2d 549 (1957); and *State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956).

The issues in the present case were whether respondent wife was proximately negligent in the premises and, if so, whether appellant was proximately contributorily negligent. These issues were to be determined by the jury upon the evidence relating to the conduct of the respective parties at the time of the accident under the instructions given them by the court.

■ What the police officer did or did not do with respect to issuing a citation to either party when he arrived at the scene was utterly immaterial to the issues submitted to the jury. For respondents' counsel to argue to the jury that the officer's function was to hold a trial on the spot and that the jury should consider or be guided in its deliberation by what he did or did not do, was such flagrant misconduct that no instruction which the trial court could have given could have cured the prejudicial effect of counsel's argument.

Therefore, appellant did not waive her right to assert on her motion for new trial and on this appeal that she was deprived of a fair trial by the opposing counsel's argument to the jury.

Under the circumstances shown by the record in this case, we hold that the trial court was in error in denying appellant's motion for new trial and in entering a judgment of dismissal upon the verdict of the jury.

The judgment is, accordingly, reversed and the cause is remanded with directions to grant appellant a new trial.

HILL, WEAVER, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

FINLEY, C. J. (dissenting)—Despite the comments of counsel set forth in the majority opinion, the appellant is not, in my opinion, entitled to a reversal of the trial court's adverse ruling on her motion for a new trial. It seems apparent that appellant's counsel was willing to speculate on the verdict of the jury—irrespective of the prejudicial nature of the remarks by respondents' counsel—since she did not object to the references to "a little baby court," nor did she request a curative instruction, nor did she claim a mistrial. Thus, the right was waived to assign error to such misconduct on appeal. This court has repeatedly held that, even where misconduct would be a basis requiring granting of a mistrial, a party who fails to preserve the error cannot later raise it after taking the calculated risk of permitting the case to go to the jury. See *Nelson v. Martinson*, 52 Wn.2d 684, 328 P.2d 703 (1958), *Casey v. Williams*, 47 Wn.2d 255, 287 P.2d 343 (1955), and *Sun Life Assurance Co. v. Cushman*, 22 Wn.2d 930, 158 P.2d 101 (1945). Appellant has already had an opportunity for a favorable jury verdict in the first trial and now by the action of the majority gets a second chance as well. Allowing a party to have such chances is, in effect, like having one's cake and eating it too; and this too often results in needless delay and multiplicity of litigation. I would affirm the judgment of the trial court.